Argued and submitted November 12, reversed December 29, 1980

## CITY OF PORTLAND,
*Petitioner,*

*v.*

## ACCIDENT PREVENTION DIVISION,
*Respondent.*

(No. SH-79-593, CA 17986)

621 P2d 665

Gary V. Abbott, Portland, argued the cause for petitioner. With him on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

James E. Mountain, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the

brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J. PRO TEMPORE.*

---

*Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J. PRO TEMPORE

This is an administrative appeal arising out of a citation and notice of penalty issued by the Accident Prevention Division (APD) of the Workers' Compensation Board for an alleged violation by the City of Portland (hereinafter "City") of a provision of the Oregon Occupational Safety and Health Code. The City appeals, seeking relief from an order by a referee of the Hearings Division, Workers' Compensation Board, affirming the citation and assessing a penalty of $350 against the City.

The main issue before this court is whether the City's function of inspecting sewer construction is within the scope of the Oregon Occupational Safety and Health Code regulations governing "Construction," OAR Chapter 437, Division 83, so that the alleged standard violated, OAR 437-83-016, applies to the City in this instance.

At the time and place of the alleged violation, Bunyard and Pettit, a contractor, was installing a sewer line in the City of Portland for a private property owner. The City had prepared the plans and specifications for the sewer, the property owner retained Bunyard and Pettit to do the work, and the City inspected the contractor's work to see if it was built according to the contract stipulation and the general municipal specifications and codes. Defendant's Public Works Inspector, Dale Maplethorpe, was assigned to inspect the job. Maplethorpe entered a 14-1/2 foot deep by 36 inch wide trench that was not shored or sloped in conformance with the shoring standards of the construction code. He entered the trench in order to inspect the pipe being laid, the field and the target for the laser which keeps the line on grade. Approximately one-half hour after Maplethorpe was in the trench, a cave-in occurred, killing one of the contractor's employes.

Upon investigating the accident, the special investigator for APD discovered that the City had not given Maplethorpe any instruction on the standards relating to trench shoring. Maplethorpe's supervisor told APD's investigator that the City relied on the experience of its inspectors and left the decision as to whether it was safe to enter an excavation up to the discretion of each individual inspector.

APD then issued the following citation:

"SERIOUS VIOLATION

"Item No. 1. At approximately 3:15 p.m. on June 26, 1979, City of Portland employee, Dale Maplethorpe entered a 15 foot deep by 36 inch wide trench that was not properly shored or sloped (top of the portable trench shield being used was 4 1/2 feet below ground level). City of Portland had not instructed employee Maplethorpe in the regulations application to this work environment."

The standard alleged to have been violated is OAR 437-83-016, which provides in part:

"The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury."

The City contends that the referee erred in holding that its employe was engaged in "construction" within the meaning of Chapter 437, Division 83, and erred in finding that its duties and authority were an integral part of the construction project in question. Alternatively, the City argues that APD did not prove by a preponderance of evidence that the City's failure to instruct Maplethorpe on the shoring standards of the construction code was a serious violation of OAR 437-83-016; that the referee's decision constitutes an unconstitutional subdelegation by APD to the City of its statutory duties of inspection under the Safe Employment Act; and that the referee erred in finding that the City had control over the working environment and the power to eliminate the hazard for the protection of its employes.

The referee concluded that the City and its employe were engaged in "construction" within the meaning of Chapter 437, Division 83, because defendant's work was "directly and vitally related to the construction being performed and because the City's employee worked at the construction site." We disagree with the referee's broad interpretation of "construction."

OAR 437-83-001 sets forth the purpose of Division 83 on construction:

"The purpose of this division is to prescribe minimum safety and health requirements for employees engaged in construction work."

OAR 437-83-002 defines the scope:

"The rules in this Division shall apply to methods, practices, equipment, and the working environment pertaining to construction."

OAR 437-83-004(a) defines construction:

"* * * Erection, alteration, repair, painting, decorating, demolition or removal, excavation, filling, or assembly of roads, buildings and other structures, above, on, or below ground or water surface."

■ The City's employe, Mr. Maplethorpe, was not "engaged in construction work." The regulatory definition of construction does not include inspection, and we believe it unreasonable to expand the term to include public works inspection, despite the fact that OAR 436-46-025 provides that the rules shall be "liberally construed." Mr. Maplethorpe's duties were to define the contractual stipulations and general municipal specifications and codes to the contractors; check survey stakes to see if the contractor was working in the right area; check on proper materials and their use; check sewer pipe seals; check the target for the laser for proper grade; and visibly inspect the work being done. He did no physical labor and did not instruct the contractor's employes in their work. Further, the contract between Bunyard and Pettit specified that the City had no authority to review the adequacy of the contractor's safety measures on the construction site.

Thus the City only acted as an inspector of the construction activities. Responsibility for the contractor's employes' safety, as well as compliance with the contract and code specifications, was left to the contractor. While municipal inspection might be said to be an integral part of the construction project in that the contractor had to ultimately comply with certain specifications defined by the inspector, the City had only advisory, not supervisory, authority over the contractor. Mr. Maplethorpe testified that if he found work was not being done according to specification he talked to the contractor about it and explained why it did not meet specifications. If the contractor

did not correct it, Mr. Maplethorpe went to his superior. When asked if "sooner or later it gets done according to the bid specifications," Mr. Maplethorpe testified, "I hope so." The City's mere advisory capacity is further illustrated by testimony of Maplethorpe's supervisor that the City was not always present at the construction site: "It is desirable to be there, but with our work load, as such, we are not able to be there all the time, but when we can, we are."

The reasoning of several federal administrative decisions interpreting the analogous, but not identical, provision of the federal construction safety.code, 29 CFR § 1910.12, is illustrative. In two decisions the Federal Review Commission held that construction managers who exercised substantial supervision over the progress of the work and the safety program at the work site were performing "construction work" within the meaning of the federal regulations even though they did not perform physical construction work. *Bertrand Goldberg Associates,* CCH 1976-77 OSHD § 20,995 (No. 1165, 1976); *Bechtel Power Corp.,* CCH 1975-76 OSHD § 20,503 (No. 5064, 1976), *affirmed per curiam, Bechtel Power Corp. v. Sec. of Labor,* 548 F2d 248 (8th Cir 1977). Since a construction manager administers and coordinates the entire construction project for an owner, thereby engaging in management functions similar to those of a general contractor, it is logical to include his duties within the definition of "construction work."

In contrast, the commission held that an architectual and engineering firm was not "engaged in construction" where the firm was employed by the owner to inspect the work of the various contractors to ensure that design specifications were met and the firm had no "responsibility or authority to direct or supervise construction methods, techniques, procedures or safety measures." *Skidmore, Owings & Merrill,* CCH 1977-78 OSHD, § 22,101 at 26,625 (No. 2165, 1977).

■■  Applying the same logic, we conclude that an employer is not engaged in "construction" unless the employe performs actual construction work or exercises substantial supervision over the construction similar to the supervision exercised by a construction manager or general contractor. Therefore, we hold that the City's public works inspector,

who was not continuously on the work site and who had no authority to supervise construction procedure or safety measures, was not "engaged in construction work" and the City may not be cited or fined for a violation of OAR 437-83-016. Because our holding on this issue is dispositive, we need not reach the City's other assignments of error.

Reversed.